# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONEBEACON INSURANCE COMPANY, a Pennsylvania corporation,<br><br>Plaintiff,<br><br>v.<br><br>PARKER, KERN, NARD & WENZEL, a business entity, form unknown; DAVID H. PARKER, an individual; JEFFREY LEMASTERS TAHIR, an individual,<br><br>Defendants. | 1:09-cv-00257 AWI GSA<br><br>ORDER RE DEFENDANTS' MOTION TO STAY THE INSTANT PROCEEDINGS<br><br>(Doc. 16) |

On July 6, 2009, Defendants Parker, Kern, Nard & Wenzel, David H. Parker and Jeffrey LeMasters Tahir, filed a Motion to Stay the instant proceedings, pending the outcome of an underlying action. (Docs. 16-18.) On August 11, 2009, Plaintiff OneBeacon Insurance Company filed its opposition. (Doc. 23.) Thereafter, on August 21, 2009, Defendants filed a reply to Plaintiff's opposition. (*See* Doc. 26.)

//
//
//

1

**FACTUAL BACKGROUND**

In November 2005, Defendants were employed by Argonaut Insurance Company to represent its interests in a workers' compensation action before the Workers Compensation Appeals Board (WCAB) in the matter entitled *Nunez v. McGuire-Nicholas Company, Argonaut, A.I.G.* The Honorable Richard Shapiro in Los Angeles issued his Findings and Award, and Opinion on Decision, on March 5, 2007. (Doc. 2 at 3, ¶ 10 & Doc. 24 at Ex. 1.)[1] In his decision, Judge Shapiro noted that defendant Argonaut had not offered any rebuttal evidence to claimants' expert testimony regarding medical opinions that claimant required in home care assistance seven days a week, twenty-four hours a day, for a period commencing June 22, 1998, through to the present. As a result, the judge awarded claimants' three care providers "$45.00 per hour, 24 hours per day, seven days per week, from June 22, 1998 to the present and continuing . . . ." Judgment was entered accordingly for claimants and against defendant Argonaut Insurance Company. (Doc. 24 at Ex. 1.)

As part of an application for professional liability insurance dated May 23, 2007, Defendants indicated they were not "aware of any incident, act, error, or omission that may result in a claim or disciplinary action being brought against" them. (Doc. 24 at Ex. 3.) In a subsequent renewal application signed May 15, 2008, Defendants replied zero ("0") to the following inquiry: "How many incidents, circumstances, errors, omissions or offenses which may result in a claim being made against your firm or any individual for this insurance, are you now aware?" (Doc. 24 at Ex. 4.)

On July 8, 2008, Argonaut Insurance Company filed suit against Defendants in Los Angeles County Superior Court, case number BC393988, asserting legal malpractice, breach of fiduciary duty and breach of contract. (Doc. 18 at Ex. 1.) Defendants filed their answers to the

---

[1] Pursuant to Rule 201 of the Federal Rules of Evidence, this Court takes judicial notice of the Findings and Award and Opinion on Decision issued in the workers' compensation action referenced herein. (*See* Doc. 25.)

complaint, on or about November 14, 2008, asserting twenty-seven affirmative defenses.[2] (Doc. 18 at Ex. 2.)

On February 9, 2009, Plaintiff filed the instant action for rescission and declaratory relief. (*See* Doc. 2.) More particularly, Plaintiff seeks judicial determination regarding its rescission of the 2007 and 2008 policies issued to Defendants, for Plaintiff asserts Defendants made false and material representations about potential claims against the firm or its attorneys. Plaintiff would not have issued the policies had it known of the potential for the underlying action filed by Argonaut Insurance Company. In the alternative, Plaintiff would have issued the policies expressly excluding the Argonaut claim. Lastly, Plaintiff seeks a declaration that it is not obligated to defend and indemnify Defendants based upon the 2007 and 2008 policies. (Doc. 2.)

On July 6, 2009, Defendant moved to stay the instant action, asserting that it will be required to "fight a two-front litigation war" because Plaintiff here seeks to adjudicate facts that are the subject of the underlying action and could result in Defendants being collaterally estopped from contesting issues in the underlying action. Defendants assert they would suffer prejudice were this action to proceed in the absence of a stay. (Doc. 17.)

On August 11, 2009, Plaintiff filed its opposition wherein it argues the "issues and facts to be litigated in the Coverage Action have no bearing on whether the Defendants failed to advise Argonaut of the actions taken in the defense of the WCAB [c]ase." A stay, argues Plaintiff, is not required because the issue presented in the instant action can be determined as a matter of law without prejudice to Defendants. Finally, Plaintiff asserts that Defendants will benefit by a determination in the instant matter because then Defendants will "know what, if any, insurance benefits are available to fund any settlement or adverse judgment." (Doc. 23.)

In the reply to the opposition, Defendants point out that the facts identified by Plaintiff to be uncontested are in fact contested, that the law provides that the instant action should be stayed

---

[2]In the underlying action, Defendants are represented by Edith R. Matthai and Ivan Nnatzaganian of Robie & Matthai in Los Angeles, California.

pending the outcome of the underlying action in Los Angeles, and Defendants would suffer prejudice were factual determinations to be made. (Doc. 26.)

## DISCUSSION

**A.     Applicable Law**

> There are two basic duties set out within the typical insurance policy, the duty to defend and the duty to indemnify. An insurer must defend a case which potentially seeks damages within the coverage of the policy, even though it ultimately turns out that coverage may not be afforded. [Citation.] Therefore, the duty to defend has been determined to be much broader than the duty to indemnify. [Citation.]

*David Kleis, Inc. v. Superior Court*, 37 Cal.App.4th 1035, 1043, 44 Cal.Rptr.2d 181 (1995).

District courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942).

> Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking an declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Wilton*, 515 U.S. at 288. Guidance fo the exercise of this discretion in found in *Brillhart* and its progeny. In *G.E.I.C.O. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998), the Ninth Circuit explained:

> The *Brillhart* factors remain the philosophical touchstone for the district court. The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory relief actions as a means of forum shopping; and it should avoid duplicative litigation. If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court. The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief. Nonetheless, federal courts should generally decline to entertain reactive declaratory actions.

(Internal citations omitted.)

When other claims are joined with an action for declaratory relief, such as the rescission sought here, the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief. The declaratory action should be retained to avoid piecemeal litigation if the federal court is required to determine major issues of state law because of the existence of non-discretionary claims. *G.E.I.C.O. v. Dizol*, at 1225-26. "But these are considerations for the district court, which is in the best position to assess how judicial economy, comity and federalism are affected in a given case." *Id.*, at 1226.

The California Supreme Court has declared, "[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action. *Montrose Chemical Corporation v. Superior Court*, 25 Cal.App.4th 902, 907-08 (1994) (*Montrose II*), citing *Montrose Chemical Corporation v. Superior Court*, 6 Cal.4th 287, 301-302 (1993) (*Montrose I*). "It is *only* where there is *no* potential conflict between the trial of the coverage dispute and the underlying action that an insurer can obtain an early trial date and resolution of its claim that coverage does not exist." *Montrose II*, at 910. The rationale behind the rule requiring stay of actions was clearly stated in *Haskel, Inc. v. Superior Court*, 33 Cal.App.4th 963, 979 (1995):

> There are three concerns which the courts have about the trial of coverage issues which necessarily turn upon facts to be litigating in the underlying action. First, the insurer, who is supposed to be on the side of the insured and with whom there is a special relationship, effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit; second, such a circumstance requires the insured to fight a two front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions – this effectively undercuts one of the primary reasons for purchasing liability insurance; and third, there is a real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insured could be collaterally estopped to contest issues in the latter by results in the former.

5

Federal courts in California have followed the *Montrose* rule.  *See, e.g., Cort v. St. Paul Fire & Marine Ins. Cos.,* 311 F.3d 979 (9th Cir. 2002); *Conestoga Servs. Corp. v. Exec. Risk Indem.,* 312 F.3d 976 (9th Cir. 2002).

### B.  Analysis

The question before this Court is whether factual issues necessary to the resolution of the instant action would result in the adjudication of facts that would prejudice Defendants in the underlying third party action, and thus weigh in favor of a stay of the instant proceedings pending the outcome of the underlying action.

#### 1.  Needless Determination of State Law Issues

Avoiding needless determination of state law issues has been explained as follows: "when 'parallel state proceedings involving the same issues and parties [are] pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court.'"  *Dizol*, 133 F.3d at 1225.

Defendants assert that Argonaut's contention in the underlying action - that Defendants failed to keep Argonaut Insurance Company fully apprised of the facts and circumstances concerning Defendants' handling of the *Nunez* WCAB matter so as to constitute legal malpractice - is logically related to a determination of the instant action, thus justifying a stay of these proceedings.  Defendants in the underlying action are the same named Defendants in the instant action.

Plaintiff responds that "the coverage issue presented in this action hinges on factual issues that are not related to the factual issues to be litigated" in the underlying action.  Here, the issue is "what the Defendants knew at the time they applied for the subject insurance policy and whether, based on that knowledge, there was a reasonable basis to believe that a claim *might possibly* be made against them."  Plaintiff asserts that certain "key uncontested facts" establish what Defendants knew about any potential claim that may be made against it when it completed the applications for legal malpractice insurance.  Those "uncontested facts" are identified as the

WCAB findings, a March 8, 2007 email from Defendant Tahir to Defendant Parker, a March 23, 2007 letter from counsel for AIG to Defendant Parker, the policy applications, and the warranty letter of June 1, 2007. Those documents, contends Plaintiff, establish that Defendants knew the following:

> (1) that the Findings accepted the [claimant's] LVN rate on the grounds that the Parker, Kern firm did not present any rebuttal evidence, offer any alternative rate or offer an expert on the LVN rate issue;
> (2) that Mr. Tahir thought he should have offered bill review witnesses;
> (3) that AIG's counsel informed the Parker, Kern firm its defense of the WCAB case was inadequate based on the multiple omissions; and
> (4) that the Parker, Kern firm had this knowledge before it provided OneBeacon with the Policy Applications and Warranty Letter.

(Doc. 23 at 8-9.) Defendants argue that what Plaintiff has identified as "uncontested facts" are in fact *contested*.

In order to make a determination regarding the legal malpractice alleged in the underlying action, it will be necessary to address what Defendants here believed were their responsibilities with regard to retaining an expert for the *Nunez* WCAB matter.

Contrary to Plaintiff's assertion otherwise, there seems to be great conflict in this area. More specifically, David H. Parker's declaration indicates that after the Argonaut matter was filed, and before the instant action commenced in this Court, he met with Plaintiff's counsel and explained the Argonaut action took the firm "by complete surprise." (Doc. 28, ¶ 4.) This is so, Parker declared, because the firm had kept Argonaut apprised of "material facts, events and developments" regarding the *Nunez* matter. Additionally, Parker believed Argonaut had assumed "responsibility to retain and make available the expert to rebut claimant's anticipated expert on the home healthcare issue." (Doc. 28, ¶ 5-6.) As a result, Parker did not believe Argonaut would claim the firm improperly handled the WCAB matter, and that his belief was supported by Argonaut's continued retention of the firm in other WCAB matters. (Doc. 28, ¶ 7.) This information is relevant to whether Defendants' responses on the insurance applications were reasonable.

With regard to WCAB findings and opinion, clearly expert testimony was not presented to counter the claimants' experts on the issue of home healthcare.  But the findings do not go so far as to identify the negligent party as between Argonaut or Defendants here.  Additionally, the March 23, 2007, letter from AIG's counsel addressed to Parker even mentioned "'multiple omissions made *by Argonaut and* your firm . . ..'" (Doc. 24, ¶ 6, emphasis added.)   Further, the email correspondence from Jeffrey Tahir to Parker seems to reference that another individual may have had some responsibility for ensuring an expert was available ("Kathleen").  Also, Tahir's email can be read to imply that he should have had a second or "back up" expert ("I should have listed my own bill review witnesses . . . and [s]ubpoenaed them for appearance.  We then could have had someon[e] available").  (*See* Doc. 24 at Ex. 2.)

Thus, whether Defendants committed malpractice in failing to present expert testimony in the *Nunez* matter pending before the WCAB is a contested issue in the underlying action that cannot be determined by the documents that Plaintiff characterizes as "uncontested," and is clearly related to whether or not Defendants' responses to the application and renewal questions concerning potential claims were reasonable, or whether the responses constituted material representations.  *State Farm Fire & Casualty Co. v. McIntosh*, 837 F.Supp. 315, 316 (N.D. Cal. 1993) (federal courts should be reluctant to decide factual issues which are currently at issue in state court; where a federal court determines such a factual issue, the parties may be collaterally estopped from litigating the issue further in the underlying action).

**2.    Forum Shopping**

An inference of forum shopping can be drawn from the fact that Plaintiff filed in federal district court despite the pendency of a state court action in the Los Angeles County Superior Court and the opportunity to file in state court.  The underlying action in Los Angeles County Superior Court was filed on July 8, 2008 (Doc. 18 at Ex. 1),whereas Plaintiff commenced the instant action in this Court on February 9, 2009.  (Doc. 2.)

In *Continental Cas. Co. v. Robsac Industries,* 947 F.2d 1367, 1371 (9th Cir. 1991) (*overruled on other grounds* in *G.E.I.C.O. v. Dizol*, 133 F.3d 1220), the Ninth Circuit, citing *Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1254, n.4 (9th Cir. 1987), described this factor as "relating to 'the "defensive" or "reactive" nature of a federal declaratory judgment suit,' and stated that if a declaratory judgment suit is defensive or reactive, that would justify a court's decision not to exercise jurisdiction." *Robsac Industries* hold, in pertinent part: "A declaratory judgment action by an insurance company against its insured during the pendency of a non-removable state court action presenting the same issues of state law is an archetype of what we have termed 'reactive' litigation." *Id.*, at 1372.

### 3. Duplicative Litigation

This factor also weighs in favor of staying the instant action. As partly explained above, the outcome of the underlying action will be dispositive of many of the issues before this Court, i.e., the scope of Plaintiff's duty to defend and indemnify. Moreover, with the risk of duplicative litigation comes the risk of inconsistent outcomes.

Defendants contend they should not be forced to litigate on two fronts or be "required to 'fight a two-front litigation war.'" (Doc. 17.) This Court agrees.

Additionally, "separate suits stemming from the same overall controversy and involving overlapping issues . . . proceed[ing] simultaneously on parallel tracks" may waste scarce judicial resources. *State Farm Fire & Casualty Co. v. McIntosh*, 837 F.Supp. at 317.

### 4. Other *Brillhart* Factors

#### a. Entanglement Between the Federal and State Court Systems

For the reasons already discussed, allowing Plaintiff's declaratory relief action to proceed will result in adjudication in both federal court and state court of the issue regarding whether Defendants committed legal malpractice, because the facts surrounding Defendants' representation of Argonaut's interests in the *Nunez* matter before the WCAB is so logically related to whether Defendants misrepresented themselves for purposes of professional liability

9

insurance and the question of whether or not Defendants were aware of any potential claim. Entanglement between the federal and state court systems will likely result because of the potential for inconsistent rulings.

### b. Convenience of Witnesses and Availability of Other Remedies

The convenience of witnesses favors a stay. Defendants are already engaged in defense of the matter filed in the Los Angeles County Superior Court. The actions or events giving rise to Argonaut's complaint arose there, including the proceedings before the WCAB in the *Nunez* matter. Moreover, requiring the parties and witnesses to engage in overlapping discovery is also inconvenient.

Notably, regarding the availability of other remedies, Defendants seek a stay of the instant proceedings, rather than a dismissal of Plaintiff's action. "[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton v. Seven Falls Company*, 515 U.S. at 288, n.2.

### CONCLUSION AND ORDER

For the reasons stated above, in the interests of judicial economy, comity and federalism, Defendants' motion to stay is GRANTED pending the outcome of the trial in the underlying action.

Further, the parties are directed to file an initial report as to the status of the underlying action entitled *Argonaut v. Tahir, et al.* within sixty (60) days of the date of service of this order.

IT IS SO ORDERED.

Dated:   **September 9, 2009**              /s/ Gary S. Austin
                                                                   UNITED STATES MAGISTRATE JUDGE